May it please the court. My name is Dave Swider and I represent the respondent in this case, Southern Bakeries, LLC. The central question is simply this, whether there is substantial evidence in the record as a whole to support the board's conclusion that Lorraine Marks Briggs' discharge in February of 2016 was motivated by a 2013... I have a preliminary question. Yes, your honor. I think I know the answer, but I may not. Do you challenge the board's assertion that violating an order to expunge and not use prior unlawful discipline is standing alone an unfair labor practice? Yes. Do you have any case support for that? Well, in this case, I think what's important on that front is that determination came later. I want to know generally. They say that it's an 8A3, so we don't have to get into discriminatory... No, I'm sorry. I misunderstood your question. I disagree with that. Any 8A3 violation is going to require discrimination in order to encourage or discourage union activity. The board cites authority for that proposition, but I don't think they cited... well, I guess they cite RELCO. Yes. I'm sorry. I haven't read RELCO for a while. I'm not sure it's crystal clear affirmation of the board's principle. Do you have an authority that the board is wrong, that even though the board's prior order says you must expunge from your records all references to a discipline that we have concluded was an unfair labor practice, that violating that directive is not an unfair labor practice unless the violator can be proven to have discriminatory intent? RELCO doesn't say that. None of the cases that it cited... I asked if you have a case. I do not. No, I don't think so. No, I think... I think it's crystal clear the board is right. I think the board is wrong, and I think it's crystal clear by 8A3 of the National Labor Relations Act. I don't care about text. How could... We've had 70 years of cases or 60 years of cases under the Wagner Act, and fleshing out 8A1 and 8A3 and a violation of a prior board order is, I would think, standing alone an unfair labor practice. Now, if you don't have a case to the contrary, fine, we'll move on. I don't have a case to the contrary, but what we're arguing in this case is that, number one, that board order came out after the discipline in this situation. In other words, we didn't have the board order in that case. I'm talking about the order reaffirmed. Yes, but that came after the fact. The question still is, was the previous discipline in 2013 relied on at all by the decision makers in 2015, 2016? How can you have an 8A3 violation without any motivation? We affirmed the unfair labor practice declaration that the 513 discipline was the product of anti-union animus and, therefore, violated 8A1, 8A3. Yes. The board's remedy was expunge that discipline from your records and don't ever use it to enhance or impose additional discipline. Yes. The client violated that directive. No. I'm sorry, Your Honor, but that's the whole point. Our client didn't violate that directive. Then we get to the fact that your last clear chance agreement and your termination notice both referenced the order that you were directed to expunge and never use again. And that's the crux of this case. No. That is not sufficient. But I have to start. That is not sufficient. All right. There's no sufficient evidence, Your Honor, that the decision maker— So you're going to make me research what you couldn't find? No. I think this case stands alone in terms of the motivation that underlay the termination and the suspension. And the record shows clearly that just because there was a mention by these new decision makers of the previous discipline doesn't make that motivational or a part of the record because we have the opportunity to show otherwise. If there's a motivational— Component. —requirement, component. Yes. Every 8A3 violation has to have it. You have to discriminate. How can you prove discrimination without motive? I'm giving you the Supreme Court case for that. I'm giving you the statute itself, which is very clear, and there are no 8A—the lack of 8A3 cases in which motivation is not at issue is significant. How can we have discriminated? How can we have committed a violation of the act that would cause this termination to be discharged? We have to look at all 8A1 cases, too. 8A3 is a tag-along. All there was was a mention of the previous discipline by these decision makers, which at that time had not been ordered by the board to be expunged. And that mention was not enough to throw this case— Stop, stop, stop. Yes, sir. At the time of the last clear chance agreement we're talking about? Yes. The board had not—the board did not decide that until 2018. The board order was 2018— I'm talking about the order we affirmed. The order you affirmed— Yes. The order we— Came later as well. Pardon? Came later as well. When the decision makers looked at the situation here, they didn't know that that previous discipline was going to be expunged by the board from the record. More importantly, in this case, common sense has got to take some control.  Mr. McNeil said— We said Southern Bakeries in 2017. Yes. And the events here were 2015 and 2016. The termination that we're looking at today, Your Honor, was in February of 2016. And what Mr. McNeil— All right. What Mr. McNeil said— That changes it. What is definitive here is that Mr. McNeil, when he disciplined Marks Briggs in October of 2015, said, After a management review of the facts surrounding the incident in your previous record for rule violations, your behavior does not call for immediate discharge. The board points out that he had to have looked at the 2013 discipline in making this decision. If he did, then what he would have done was terminate her at this time. She committed a very serious offense. She was eating product off the line, putting her hands back on product that was just going to be packaged. Very unsanitary. Certainly a food safety violation. Very dangerous. And yet, Mr. McNeil didn't fire her for that. He said, We're going to give you a final warning. A final warning plus a final warning equals discharge. A final warning, in this case, was all that was given, notwithstanding the previous final warning. So there was simply a mention of the 2013 discipline. It played no role in his decision-making process. Having played no role at that stage of this proceeding, it also played no role in her termination. What she committed to get her terminated was also a serious offense for which discharge was the appropriate remedy in the rules. And so, Your Honor, our position is clear that there is not sufficient evidence in this record to support an 8A3 violation in this situation. Thank you. Mr. Cantor, that changes the thing very much for me. I don't think your brief revealed or noted or reminded us that the expunge, do not use order was not entered until after the facts in question. May it please the Court, Jared Cantor on behalf of the National Labor Relations Board. Your Honor, I think the brief in the facts section, we do lay that out, and counsel is not correct on one point. The administrative law judge had issued his recommended decision, which contained the finding the unfair labor practice and requiring the expungement. When was that, 2000? 14. 14? Yes. Now give me a case saying that an anticipatory violation of an order not yet issued, standing alone, is an unfair labor practice. Your Honor, I believe that would be the cases we cite in our brief, Celotex and Dynamics and Opportunity Homes and RELCO. But the law there is not about an anticipatory. The question then is, when you're looking at all the unlawful discipline, was the first one unlawfully motivated? Is that the violation? And then when you look at the subsequent ones, what the board case law in this area, and RELCO cites approvingly, it cites the Dynamics case, which sets forth this principle. Then when it comes to all the subsequent disciplines, if they're relying on and follow from the first unlawful discipline, unlawfully motivated one. Oh, but you're bad on the facts. Because all the decision makers here were not hired until long after the first case was over. Well, that's... The hearing. Not the hearing in... We had no evidence that they were aware of the ALJ's recommended decision. Did you? Well, Your Honor... Your evidence was that Ledbetter was there when she testified. So he knew about the incident. Well, he testified against her with regards to the 2013 violation. And certainly, there's no record evidence that when the company received that adverse decision by the administrative law judge, that company counsel communicated that to the client. But certainly, in July of 2014, the ALJ found, and this is the Southern Bakeries 1 case, found that the 2013 last chance agreement was unlawfully motivated. The ALJ clearly rested his finding as to... Marks-Briggs? Yeah, Marks-Briggs, on the violation of the order to expunge from the records and not to use. And now I learned, or I should have learned, I guess I should have read more carefully. That order didn't exist when the subsequent discipline was imposed. Well, no, Your Honor. The board's decision in this case, the board's decision that's in front of the court here is from May of 2018. That board decision, at the time it issued... violates 8A1 and 3, unless same discipline would have been imposed. Notation of prior discipline not retracted and appears to be the only explanation for the severity of the last fair chance agreement, which is clearly not true. Since a second final clear warning would have resulted in termination otherwise. I thought this was not a difficult case, but it is. Well, Your Honor, I would point Your Honor to go back and to look at RALCO. And where this case admittedly is different than the ones we cite is that in all of those cases, we essentially have all of the unfair labor practices end up being grouped. Here, they are split in time and just coincidentally we wind up with two separate cases. But the principle still holds that when you look at, for instance, RALCO. Okay, now give me a case where there is a total change in decision-maker. Where this principle you're citing is routinely applied. I don't know what you mean changed in decision-maker from... McNeil and who was his boss? Ledbetter? Well, no. Ledbetter was McNeil's boss. He was vice president and general manager. Hagwood and McNeil had no history on this, and they were the decision-makers. Well, Hagood played no role in the discharge or 2015 last chance agreement, and McNeil consulted with Ledbetter for both. Ledbetter was the one who told McNeil in 2015, she's already on a last chance agreement. And at that time, the company would have been on notice that the law judge had found the 2013 conduct unlawful. And so, again, to my point about the case law, certainly there really is no prejudice to the company in any of those cases. But because in a case where, for instance, in RALCO, where you have an initial discipline and then discipline two and discipline three at the very end. And the company keeps building on it and citing back to discipline number one. In those cases, when you look at RALCO, for instance, you do the right line analysis for that very first one. And then when the employer keeps on relying on it, the question then becomes for each subsequent one, first factually, was it relied on? And then you go to essentially what is the second step of right line, is show us your affirmative defense. That notwithstanding having relied on that first one, you would have taken the same action. And certainly in all of those cases, as is here, well, I shouldn't say that. Certainly in those cases, the employer could say, woe is me. When I discharged Bob with discipline number three, I had no idea that discipline number one was going to be found unlawful. Here it's a little bit different and kind of better in the sense of at the time that they start relying on this 2013 last chance agreement, they already had a strike against them. The administrative law judge had already found the 2013 conduct. And it was not pending on appeal? It was pending on exceptions. Okay. Before the board. Well, all right. But then it continues, Your Honor. And rather than do the normal progressive discipline and fire her for the second final warning, they did a last clear chance agreement, presumably. I don't know about presumably, but I suspect because they knew the first one was still under administrative and judicial review. Well, Your Honor, and so that goes then to the affirmative defense of showing that in that instant. No. We're talking about the core 883 evidence, sufficient evidence of animus. Yes, Your Honor. In the second one. In the second one. Independent. Because the first one was. Well, it's not independent, Your Honor. The 2015 last chance agreement. I just gave you the facts that make it was independent that were ignored by the ALJ. That less discipline was imposed than would have been had the first discipline that was still under review for animus been final. Well, no, Your Honor. Then we would have had a double whammy, if you will, because as the board points out, and we point out in our brief, not only has no one received a last chance agreement for this type of grazing eating conduct, but it would have been very extreme to then have a discharge for that. Now, wait a minute. They've just been told by Haggard the whole floor. Stop doing this. Yes, Your Honor. And she said she just kept doing it. She says, I do it all the time because everybody does. Yes, Your Honor. And we then have. That's pretty serious discipline. That's pretty, pretty serious misconduct in a food manufacturing facility. The board doesn't dispute it was a violation and that some discipline could have issued. The question is for her type of discipline, where we're looking where the burden was on them to show the burden isn't yet. Yes, it would have been. That's that's by your interpretation of the law. Well, Your Honor. The burden was on the board to prove an 883 violation. Well, Your Honor. At the time, the board's decision and order issued in this case. The court's order had issued enforcing the prior unfair labor practice. Yeah. So at the time, the board's decision and order issued here. That's in front of this court. Now, this court had enforced that prior one. All this discipline. It was all of the discipline in question was before that. Well, it was after the administrative law judges decision. But, you know, that's why appellate courts exist. Appellate tribunals exist is because. Trial tribunal sometimes get it wrong. Race to Dakota doesn't apply until until an opportunity to appeal has been has been exhausted. Well, Your Honor, respectfully, I think that's why the board then waited to issue the decision here. Potentially is to wait to see what this court did. Because if the court would have disagreed on the 2013 discipline, then the board and it talks about in a footnote. It essentially reserves the issue as to whether each one of these could be proved under right line with regards to the typical knowledge animus. But it didn't look at that because at the time, the decision in front of this court had issued. By the time the decision that's now in front of this court had issued. The court had agreed. I understand your position. The board rests on its brief. Your Honor, Judge Loken, you've put your finger exactly on why we're here today. This is a grossly unfair, unlawful determination in the sense that we had the right to appeal the ALJ's decision. It was under appeal at the time these decisions were made. Right line doesn't apply because the first question in right line is, was the previous discipline relied on? It's very clear that it wasn't relied on or she would have been discharged in October of 2015. When you look at February of 2016, there can be no question that the offense she committed was even more egregious. After having been told in a group setting not to harass, not to do what Mulder had done, she went and did it. I'm not convinced by your argument that this is crystal clear that there was no anti-union animus. What concerns me is that the board appears to have applied the law incorrectly. I agree 100% with that as well. In which case, it's a remand situation, isn't it? To the board? That's potentially something that could happen in this case. I think if you review the record as a whole and you look at it thoroughly and fairly, you never get to even the possible sense that this was motivated at all by what happened in 2013. The new decision makers didn't even know about what happened in 2013. They were simply looking at present behavior. When the board relies on records, the only other thing they rely on is records for four years of discipline. These guys weren't involved in any of that discipline. They're brand new to the table. In this situation, unlike any of the others, you have two other things. A line was drawn. The facts are not good for you. Unless the prior discipline was relevant to the subsequent, there was absolutely no reason to reference it. The human resources people referenced it in both the LCA and the termination of it. That's very damning. If that's enough to establish an unfair labor law. But it isn't. I want to tell you why for two reasons. One is... Okay, I'll wrap it up. Both my colleagues have questions. The final statement I would have is that... Time's up. Thank you, Ron. Case has been fairly brief to argue that. We'll take it under advisement.